Thank you. All right. This is appeal number 222538, United States v. Demetrius Harvey, and it is Mr. Hillis. Hello, Mr. Hillis. Hi, Judge. Thank you for politely explaining away my mistake, but I'm now going to try to talk about what we think is another one. And here it's about the imposition of the sentencing enhancement. For the record, my name is Daniel Hillis, and I represent Mr. Harvey, who, in this case, received the two-level enhancement, or excuse me, received the B6B enhancement for transferring a firearm to somebody who claimed to be a felon. Now, there's no evidence that the person was a felon, but that's not our gripe here. Our concern in this case is really temporal. The disclosure where the individual who's the CI claims to be a felon is made after the last sale of the firearm, the last transfer of the firearm. So that, we think, is a central temporal feature in this case that would say the enhancement cannot be correctly applied. This is the government's version of the effects. So record 100 at page 2 describes what the chronology is for the different gun sales. And after the final sale is made, the third sale is made, the CI says, I'm a felon, but there's no future transfer or sale of a firearm. So if B6B allows for the imposition of the enhancement when it is a transfer with knowledge, so there's a scienter component, of the firearm to the prohibited individual, that's what we're missing here. There's no knowledge that exists beforehand because the disclosure comes post-sale from the CI. You think we're reviewing for plein air? No, I don't, Judge, and I don't mind jumping into that because this is an important feature of this case and will be in others. But I think this is very similar to Billups. In Billups, which, by the way, is not unique, and we can look also to instances where it benefits the government, say the Ninth Circuit case in Paris, Golan, I hope I'm pronouncing that correctly. There it benefited the government where they advanced a theory on the appeal, a new argument, but the same claim about what it was that they should allow to, excuse me, be allowed to advance to the Ninth Circuit. Here we're doing the same thing, and it's similar to what they've done in Billups. And Ye versus City of Escondido speaks to the issue, too. You can waive a claim, but you don't waive an argument. And here the claim has always been that B6B doesn't apply. The argument was different in the district court. We acknowledge that. But the claim was the B6B claim. The argument now is different, but it's just a new twist. When we're talking about citing new legal authority, I have no trouble with that. What concerns me here, Mr. Hillis, is this factual record looks to me at best ambiguous on your point about sequence. We have the pre-sentence report says during, we get the phrase right, during the exchange, right? And if this is an issue, the district judge has the ability and opportunity to dig into the facts and figure out what actually happened. When it's not raised, there's no reason to do that. This case went back upon remand. So the district court had originally focused on the word felon, and they thought that was enough for the B6B5 enhancement, or B5B enhancement, I think at that point. So on the way back, the government just had to produce its evidence. And here, it offered no additional information, tried to put this on the same tilt as Jackson. But the government's version of the offense is no surprise, no new fact. It was in the PSR referenced and attached. Why doesn't that cut against you? I don't think so, and I'll explain why. Because if the PSR in a paragraph descriptively says during, and it's just meant to say that in the course of this transaction, these things occurred sort of not in a technical sense, but about a general descriptor. It occurred during. You sat in the car. You made a transaction. Somebody disclosed that they were a felon. Oh, that's correct. That occurred during this transaction. But if you look to the government's version of the offense, it lays out more specifically the factual information that disambiguates anything here, Judge Hamilton, to say the transaction occurred. And you could just look at the various sentences in the government's paragraph on this. And it says at the end of it, after the money is, the $250 has apparently changed hands, the sale has been made, that the individual says, I'm a felon. And that's when they called off the dogs. They said, this violates the ATF protocol. If the person is under warrant, as he was my client, they weren't supposed to engage him at all in these sort of transactions. But the district court had those facts, Judge Hamilton. This is not springing anything new. The government, I think, could have advanced that more clearly to the district court, make the district court aware of that important thing. It just escaped people's attention. It's not to cast aspersions on anybody or everybody here. It was missed, and it's now to be corrected. That sounds like plain error. I say factually it was missed, but it's still just a new twist on whether or not B6B applies. I think we went under plain error. It would call for new factual findings, correct? I don't think that anybody focused on this. I don't think there was a factual finding, though, Judge. Exactly. So I'm not asking for a new one. But to decide whether this applies, you would have to decide about sequence, and you'd have to get into the UCC, perhaps, and the standards for the moment that the sale occurs, correct? That's your theory. Well, not the UCC, but about the sequence, for sure. But we don't have to look any further than the government. Well, maybe this fellow is a merchant, right? I suppose he was, in a manner of speaking. But we just have to look to the government's version of offense. I don't think it's going to want to change its version of offense. I mean, it filed it. I presume it was correct. So the government would have to backpedal from what's written to say that the disclosure was made prior to the money changing hands in exchange for the goods. That didn't happen. They've never said that there's anything contrary. They try to say that it's a hyper-technical reading, and I say that it's not. It's a plain reading. Just look at what the paragraph says. It's page 2, record 100. Now, in contrast to the plea agreement, okay, the initial PSR contained explicit language establishing that the conversation as to the source's status as a felon occurred during that transaction. So why couldn't the district court rely on that factual recitation of the PSR, given that Harvey never objected to it? Well, the objection was always made to the enhancement judge in one fashion or another. It was, you know, applied a different enhancement the first time than the cases it is now before us on the B6B. But the district court is entitled to rely on the PSR, but I'm saying importantly here, when you have an imprecise description about during, right, that says why the enhancement should apply, we can easily trace this back to the government, who has the burden of proof. What did you put here to disambiguate this if we need to? And we just look at the government's version of offense. So the district court that's going to rely on the PSR, I presume, is relying in part on the government's version of offense that's attached to it, and the government is not backing off from what the sequence of events are. They're trying to say it's a hyper-technical reading, and again, I say you can decide that for yourselves. Just look at what they wrote. Now, if I can circle for a moment to plain air, I think that we still win because this is something that is, in our view, not ambiguous. So if there is an error here, it would be one that is clear based on the text because my client does not have advanced knowledge of the felon status, and this is, again, I keep pointing to the same piece of evidence because it's the right piece of evidence. Record 100, page 2. The disclosure is made post-sale about the felon status, and the government acknowledges that if this is a mistake up to that point, then this is a case that would warrant relief under plain air. And we think that we get to the same place either route, but for purposes of future cases, I would much prefer that we say that this is de novo review because this is not just something that is a one-way street. The government may advance instances where it is also looking for the benefit of de novo review on things, and the law, I think, objectively supports our interpretation and our request for de novo review under these circumstances. But regardless, I think that we win under plain air. I'd be happy to answer questions about that if the court has questions about how this might be different on plain air, but I don't see a different result. With that, I reserve the balance of my time. Thank you so much. Hello, Ms. Greenwald. Good afternoon. Yeah, good afternoon. May it please the court. Defendant forfeited the timing argument he's raising for the first time on appeal. If the defendant had raised this argument in the district court, the government would have had the opportunity to offer evidence and present argument. The district court would have made a factual finding, and this court would have a developed record. And as this court determined in Geasland, which we cited, I just want to confirm you all received our 28-J letter, as we cited some cases in response to the defendant's brief. But we cited Geasland there. And in that case, and others cited in there, when it distinguished Phillips on precisely this basis, where there needs to be more legal analysis, more factual basis, that's not a new twist. It's not, as in Geasland, where there was simply submission of additional authority. That's not this case. This case is one where it's a whole new argument that the record could have been and should have been developed on if the defendant had raised it. But whether it is plain error review or not de novo, Your Honor, it would be clear error review. It's either plain error or clear error. And under either review, based on this record before the court, the court did not clearly err, much less plainly err. The government's plea agreement didn't address an order of events. It provided a summary. That paragraph that the defense is emphasizing, it was a summary of what happened. And the PSR reasonably interpreted the conversation set forth in that plea agreement summary and set forth clearly that the CI told the defendant he was a felon as occurring during that firearm exchange. And the defendant at the first sentencing had no objection to that, accepted it. And that first sentencing was very relevant on this identical issue. Because the B-5 issue on the timing is exactly the same as the B-6 issue. On both of those enhancements require that at the time the firearm is transferred, in one case you have reason to think it's going to be used in another offense, that's in the B-6, in the B-5, that you have reason to believe that you're passing it, transferring it to someone that's prohibited from possessing it. So the timing was critical as to both. The other thing I think it's important to note is this was a supplement to the PSR. It wasn't a whole redo of the PSR. And the updated PSR that was sent did not include an entire recitation of the facts. It included a recalculation of the guidelines. So that the district court here, without hearing anything from the defendant, was perfectly reasonable in relying on the factual record that was before it, which wasn't being challenged. And so based on this record, what the district court had was an unchallenged provision in the PSR saying that these statements were made during the transaction. And on that record, there's no clear error. There's certainly no plain error. So unless the court has any questions, we would rest on our brief and our argument today and ask you to affirm the sentence. Thank you, Ms. Greenville. Mr. Hillis? A couple of quick things. First of all, Giesland is a non-presidential decision. We take aim at these things because they're not supposed to be cited as presidential authority. If we can cite non-presidential authority, I guess I will delve in to Coates, United States v. Coates, where it was a case in full disclosure, I argued, a couple of weeks ago. And it was decided. But there, we raised whether or not the smell of marijuana was probable cause. And the court addressed that issue, even though it wasn't litigated below. And we made a Yee v. City of Escondido argument in that case. And the court reached the issue. So it did not do it under plain error. And it certainly didn't do it under clear error. It was a de novo review. And nothing was even said about whether or not this was waived, forfeited, et cetera, because it wasn't. The authority, again, supports our position on this. We do not think that it is correct to say that we would look to clear error here. Clear error is what we use for determining whether or not the facts are contestable. These facts are not in dispute. We are looking here at a legal issue, and that is de novo review. That's what we do with legal issues on the appeal. Facts are for clear error. Legal issues are for de novo review. That's what we have. And finally, if the government is correct that the record is established, we believe that they are right, we take issue again with what do we do with the evidence that it attached to the PSR when it sent in its version of offense. And it said that there was a sequence of events. You can read it. At the end of the sale, there is the disclosure. If there's anything in there to say the disclosure was made in advance, the government hasn't pointed to the court to say what that is. It just circles back to this word during. But it says that the PSR is interpreting the events to describe them basically to the judge about what happened. We, again, disambiguate the word during by looking to what the language is of evidence the government submitted or of record, I should say. The government submitted its version of the offense. It lays out what the sequence is. When we apply what the facts are to the language of the guideline, we see that this was not a sale or a transfer of a firearm that was made with knowledge of another person's felony status because that knowledge came later. Now, we didn't attack anything in this case based on whether or not the person had to be proven to be a felon. The Tenth Circuit case law would support us on that, I think, Francis. But in Jackson, this court didn't say you have to prove that the person was, in fact, an illicit drug user for the enhancement to apply. So we thought the clear path, the cleanest way of doing this was instead to focus on what this case brings to the table. And I will also say, in that regard, we had no reason at the first sentencing hearing to contest what the chronology events was because we knew there was a mistake there because they said that you could apply the enhancement if a person was just a felon, which was wrong. So that doesn't spot them anything. That information didn't help resolve the issue that is present here now. What does help us is what the government said in its version of offense, and there the chronology is clean, clear. We think that that is what we need to look to for proper disposition in this case. So with that, I ask the court to vacate. Thank you. Thank you. Thanks to you, Mr. Hillis, and thanks to Ms. Greenwald. The case will be taken under advisement.